_____

No. 96-1161
_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　* Appeal from the United States
　　　　v.　　　　　　　　　　* District Court for the
　　　　　　　　　　　　　　　　* District of Minnesota.
Ivory Mosby, also known as　　*
Rafiq Zareef Muhaymin,　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　Appellant.　　　　　*

_____

Submitted: October 24, 1996

Filed: December 6, 1996
_____

Before MAGILL, ROSS, and MURPHY, Circuit Judges.
_____

MAGILL, Circuit Judge.


Ivory Mosby[1] was convicted in the district court[2] for being a felon in possession of ammunition, a violation of 18 U.S.C. § 922(g)(1). Mosby now appeals his conviction, arguing that (1) the seizure of evidence exceeded the scope of a search warrant; (2) Mosby's Sixth Amendment rights were violated when federal officers interviewed him without his attorney present; (3) there was

_____

[1]Ivory Mosby is also known as Rafiq Zareef Muhaymin. In United States v. Mosby, 60 F.3d 454 (8th Cir. 1995) (Mosby I) (reversing grant of motion for judgment of acquittal), cert. denied, 116 S. Ct. 938 (1996), we referred to the defendant as Mosby. See, e.g., id. at 455. Although the parties in the instant matter refer to the defendant as Rafiq Zareef Muhaymin, for the sake of consistency we shall continue to refer to him as Mosby.

[2]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

insufficient evidence to convict Mosby of being a felon in possession of ammunition; (4) evidence that Mosby possessed a crossbow and a starter pistol was improperly admitted at trial; and (5) evidence that Mosby had been convicted of criminal sexual conduct was improperly admitted.[3]  We affirm.

## I.

Several handguns, including a .38 caliber revolver and a .22 caliber pistol, were stolen during a June 1994 burglary of T.C. Select Homes, a business in Brooklyn Park, Minnesota. Investigating the burglary, Brooklyn Park police received information that Mosby had purchased the stolen .38 caliber and .22 caliber handguns.  Police obtained a search warrant for Mosby's person and for the upper unit of 800 Queen Avenue North, Minneapolis, Minnesota, where Mosby was staying.[4]  The warrant described the following property which could be seized:

> Firearms to include but not limited to a Smith and Wesson .38 cal revolver and a 6x9 .22 cal pistol, Checks or money orders stolen from [the burglary.]

---

[3]Mosby also argues that Congress does not have the authority under the Interstate Commerce Clause, U.S. Const. art. I, § 8, cl. 3, to criminalize the possession of ammunition manufactured and possessed solely within the State of Minnesota.  We considered and rejected this argument in Mosby I, where we reversed the district court's grant of motion for judgment of acquittal.  See Mosby I, 60 F.3d at 457.  The Mosby I decision is binding in this case both as stare decisis and as law of the case.  See Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1297 (8th Cir. 1994) (panel of this Court has no authority to overrule earlier decision), cert. denied, 115 S. Ct. 779 (1995); United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995) ("The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.").

[4]The apartment where Mosby was staying was being rented by Audrey Clark, the sister of Orlando Clark.  Orlando Clark was a suspect in the T.C. Select Homes burglary.

-2-

Items or documents that would show constructive proof of ownership of the above items.

Application & Warrant at 4, reprinted in Appellant's Add. at E-5.

The police executed the search warrant at Mosby's residence on July 29, 1994. Mosby was not present when the warrant was executed. The police did not find the specified handguns, but did discover eighty-nine rounds of .44 magnum caliber ammunition in the apartment. Twenty-two of the rounds were in a briefcase, while the rest were in two boxes in a bedroom closet. An identification card and a traffic citation issued to Mosby were found near the briefcase containing the ammunition.

On August 2, 1994, Mosby contacted the Brooklyn Park Police Department regarding the search, and spoke with Detective Jeffrey Jindra. At trial, Detective Jindra testified that, during this conversation, Mosby told him that the briefcase and the .44 caliber rounds belonged to Mosby. See Trial Tr. at 54. Mosby denied that he made these statements to Detective Jindra. See id. at 160. During an August 4, 1994 conversation with Susan Keith, Mosby's probation officer, Mosby allegedly stated both that the ammunition found at his residence belonged to him, and that he was keeping it for a friend. See id. at 34 (testimony of Susan Keith).

A warrant was issued for Mosby's arrest on August 6, 1994, for a parole violation. On August 8, 1994, Detective Jindra went to Mosby's residence, and observed Mosby, who had a briefcase, get into a car. Detective Jindra followed Mosby in an unmarked police car which had a "fireball," or detachable flashing red light, and signalled Mosby to stop by activating the fireball. Mosby pointed a loaded hand-held crossbow at Detective Jindra's vehicle, and took evasive action by driving through a stoplight. Detective Jindra lost Mosby, who was subsequently apprehended several miles away by other officers. In addition to the crossbow, when arrested Mosby

had a .22 caliber starter pistol with him in his briefcase.

Following his arrest, Mosby was detained in the Hennepin County Jail, pending charges for state law violations. During this period, the .22 caliber starter pistol was sent to the Bureau of Alcohol, Tobacco, and Firearms (BATF) to determine if it could be modified to fire live ammunition.[5] While detained, Mosby contacted the BATF to talk about the starter pistol. BATF agents agreed to talk with Mosby at the Hennepin County Jail. On September 30, 1994, BATF agents interviewed Mosby for approximately thirty minutes at the Hennepin County Jail. Mosby was given Miranda warnings prior to the interview, and Mosby waived his right to have his attorney present during the interview. Mosby told the BATF agents that the starter pistol was a toy, and that he had been keeping the .44 caliber ammunition for a friend.

On November 23, 1994, Mosby was indicted on the federal charge of being a felon in possession of ammunition, and his case proceeded to trial. Prior to trial, Mosby moved to suppress a variety of evidence, including the .44 caliber ammunition found in his apartment and the statements that he made to the BATF agents during the interview at the Hennepin County Jail. The district court, adopting in part the magistrate judge's[6] report and recommendation, refused to suppress evidence of the .44 caliber

---

[5]Under 18 U.S.C. § 921(a)(3)(A), a firearm means "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." (emphasis added). It is unclear if the starter pistol possessed by Mosby would have met this definition; the pistol was designed to shoot blanks, and the BATF succeeded in boring-out the starter pistol's barrel and chamber. During testing, however, the BATF apparently cracked the pistol's frame and melted a hole in the barrel. See Trial Tr. at 79. Mosby was not charged with being a felon in possession of a firearm based on his possession of the starter pistol.

[6]The Honorable Ann D. Montgomery, United States Magistrate Judge for the District of Minnesota.

ammunition and Mosby's statements to the BATF agents, although it did suppress a variety of other evidence seized from Mosby's residence on the ground that the seizures exceeded the scope of the search warrant.

Over Mosby's objection, the district court admitted into evidence at trial the crossbow and starter pistol recovered from Mosby upon his arrest, and allowed evidence that Mosby had been convicted of the felony of criminal sexual conduct.

Following a jury trial, Mosby was convicted of being a felon in possession of ammunition. Mosby moved for a judgment of acquittal based on a constitutional challenge to Congress's authority to criminalize his possession of ammunition which had been both manufactured and possessed within Minnesota. The district court granted this motion, and we reversed. See United States v. Mosby, 60 F.3d 454, 457 (8th Cir. 1995), cert. denied, 116 S. Ct. 938 (1996). Upon remand, the district court departed downward from the sentencing guidelines and sentenced Mosby to 180 months imprisonment and a five-year period of supervised release. This appeal followed.

## II.

Mosby first argues that the eighty-nine rounds of .44 caliber ammunition seized from his apartment should have been suppressed as outside the scope of the warrant. "We must affirm the district court's denial of the motion to suppress unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or, upon review of the entire record, we are left with the definite and firm conviction that a mistake has been made." United States v. Lowe, 50 F.3d 604, 607 (8th Cir.) (quotations, alteration, and citation omitted), cert. denied, 116 S. Ct. 260 (1995).

A search warrant's language "must describe the items to be seized with sufficient particularity: 'the language must be sufficiently definite to enable the searcher to reasonably ascertain and identify the things authorized to be seized.'" Id. (quoting United States v. Saunders, 957 F.2d 1488, 1491 (8th Cir.), cert. denied, 506 U.S. 889 (1992)). "The purpose of the particularity requirement is to prevent a general exploratory rummaging through a person's belongings." United States v. Hibbard, 963 F.2d 1100, 1102 (8th Cir. 1992). Whether a warrant satisfies the particularity requirement is examined under a "standard of 'practical accuracy' rather that a hypertechnical one." United States v. Peters, 92 F.3d 768, 769-70 (8th Cir. 1996).

The warrant in this case allowed the seizure of firearms and "[i]tems or documents that would show constructive proof of ownership" of firearms. Application & Warrant at 4, reprinted in Appellant's Add. at E-5. Because a firearm is necessary to discharge ammunition, we agree with the district court's reasoning that the possession of ammunition strongly suggests the constructive possession of firearms. See Report & Recommendation at 2. Mosby complains that "[t]he 'constructive proof of ownership' is not the same as 'constructive possession.'" Appellant's Br. at 15. While we agree that the warrant might more correctly have used the phrase "constructive possession," see, e.g., Lowe, 50 F.3d at 607 (upholding seizure of videotape under warrant allowing seizure of items showing "constructive possession of any controlled substances"), we believe that, in the circumstances of this case, there is only a "hypertechnical" distinction between constructive possession and constructive ownership, and that the warrant met the applicable practical accuracy standard.[7]

---

[7]Mosby also argues that "constructive ownership" referred only to the apartment where items were found, a construction

-6-

Mosby next argues that, because he was under indictment on state criminal charges and his right to counsel had attached, statements he made to BATF agents without his attorney present violated his Sixth Amendment right to counsel. We disagree. In McNeil v. Wisconsin, 501 U.S. 171 (1991), the United States Supreme Court held that:

> The Sixth Amendment right [to counsel] . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

Id. at 175 (quotations and citations omitted). At the time of the BATF interview, Mosby had been charged by the state of Minnesota only with possession of the starter pistol and an aggravated assault on Detective Jindra. Mosby was not charged with the federal violation of being a felon in possession of the .44 caliber ammunition until well after the time of the interview. Because there had been no initiation of any adversary judicial criminal proceedings regarding Mosby's possession of the .44 caliber ammunition, no Sixth Amendment right to counsel had attached, and Mosby's argument must fail.

**IV.**

Mosby argues that there was insufficient evidence to convict him of possessing the .44 caliber ammunition. We review the

---

contradicted by the warrant's specific language. See Application & Warrant at 4, reprinted in Appellant's Add. at E-5.

sufficiency of the evidence to support a jury verdict under a highly deferential standard; we may reverse a jury's finding only if, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original).

The evidence against Mosby was overwhelming. There was testimony from BATF agents, a police officer, and Mosby's probation officer that Mosby repeatedly admitted possessing the ammunition. Mosby resided in the apartment where the ammunition was found, and his identification was near the briefcase where the ammunition had been cached. Clearly, based on this evidence, a reasonable juror could have believed that Mosby possessed the .44 caliber ammunition.

## V.

Mosby further argues that the district court erred by allowing into evidence the hand-held crossbow and starter pistol that Mosby possessed at the time of his arrest. Mosby argues that his possession of the crossbow and starter pistol were unrelated to his possession of .44 caliber ammunition, and did not tend to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" under Federal Rule of Evidence 404(b). We review a district court's evidentiary decisions for abuse of discretion. <u>See</u> <u>United States v. Galyen</u>, 798 F.2d 331, 332 (8th Cir. 1986).

As Mosby suggests, his possession of a crossbow and a .22 caliber starter pistol were not directly linked to his possession of .44 caliber ammunition; the crossbow could fire only bolts, while the unmodified starter gun could fire only .22 caliber blanks. Under our precedent, however, "the jury in a criminal case

is entitled to know about the context of a crime and any events that help explain the context." United States v. DeAngelo, 13 F.3d 1228, 1232 (8th Cir.), cert. denied, 114 S. Ct. 2717 (1994); see also United States v. Maddix, 96 F.3d 311, 315 (8th Cir. 1996) (Evidence that a defendant charged with being a felon in possession of a firearm had solicited a prostitute, smoked crack, and physically threatened and assaulted someone with a utility knife "was admissible as an integral part of the immediate context of the crime charged . . . ." (quotations omitted)). The context of this case included Mosby's actions following the discovery of the .44 caliber ammunition in his apartment and his conversation with Detective Jindra in which he admitted possession of the ammunition, including Mosby's subsequent flight from Detective Jindra and his alleged assault on the detective with the crossbow. Mosby's actions could reasonably have been interpreted by a jury as probative of Mosby's guilty conscience, and his desire to escape the consequences of his illegal possession of ammunition. We find no abuse of discretion in the admission of the hand-held crossbow as evidence.

We agree that the relevance of the starter pistol to this case is somewhat more attenuated. We need not decide if it was error for the district court to admit this evidence, however, as it is clear that any error would have been harmless. See, e.g., Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995) ("Even with a clear showing of abuse, we will reverse only if the error had a 'substantial influence' on the jury's verdict." (reviewing evidentiary decision for harmless error) (citations omitted)). We do not believe that the piece of evidence at issue--a small starter pistol, which Mosby consistently referred to as a "toy," and which had a cracked frame and a hole melted in its top--could have had a substantial influence on the jury's verdict. We find this particularly true in light of the overwhelming evidence presented proving Mosby's possession of the .44 caliber ammunition.

Finally, Mosby argues that evidence that he had been convicted of criminal sexual conduct was cumulative and highly prejudicial and should have been excluded.  We conclude that the district court did not abuse its discretion in admitting this evidence.  <u>See</u> <u>United States v. Lucas</u>, 932 F.2d 1210, 1217 (8th Cir.) ("It is well settled that the trial court has broad discretion in determining the relevancy and admissibility of evidence, which will be disturbed upon appeal only where there is abuse of that discretion." (quotations, alteration, and citations omitted)), <u>cert. denied</u>, 502 U.S. 949 (1991).

During its case-in-chief, the government presented unredacted documentary evidence to prove that Mosby had been convicted of first degree attempted murder and first degree criminal sexual conduct.  <u>See</u> Trial Tr. at 28-30 (introduction of Gov. Ex. 5, a certification of conviction dated January 11, 1985, from the Hennepin County District Court).  Neither the prosecuting attorney nor the government witness testifying about the documentary evidence commented on the conviction for criminal sexual conduct, although the jury was allowed to see the unredacted certification of conviction.  <u>Id.</u>[8]

To convict Mosby of being a felon in possession of ammunition,

_____

[8]Evidence of Mosby's prior conviction for criminal sexual conduct was also presented to impeach Mosby's testimony.  On cross-examination, the government asked Mosby if he had been "found guilty in January of [1985] for criminal sexual conduct in the first degree . . . ."  Trial Tr. at 202.  Mosby responded "yes," <u>id.</u>, and the cross-examination moved on to other subjects.  We do not believe that the district court abused its discretion in allowing this brief question.  <u>See</u> <u>Jones v. Collier</u>, 762 F.2d 71, 72 n.2 (8th Cir. 1985) ("In cases such as this, where dishonesty is not an element of prior convictions, but the credibility of the witnesses is all important, the trial court will not abuse its discretion by admitting such evidence[ of a prior rape conviction].").

the government had the burden of proving that Mosby was a previously convicted felon. See United States v. Diggs, 82 F.3d 195, 198 (8th Cir. 1996), cert. denied, No. 96-5244, 65 U.S.L.W. 3309 (Oct. 21, 1996). We have consistently held that "'[i]t is not error to allow the government to introduce more than one conviction in a case where only a single conviction is necessary to make the case.'" Id. (quoting United States v. Garner, 32 F.3d 1305, 1311 (8th Cir. 1994), cert. denied, 115 S. Ct. 1366 (1995) (alteration in original)). While we agree that evidence that a defendant had once committed a sexual crime may be prejudicial, we do not believe that it is unfairly prejudicial. See, e.g., United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir. 1996) (rejecting defendant's argument that "the Court did not adequately consider the danger his prior rape conviction posed to his chances for an impartial verdict"). We can see no abuse of the district court's discretion in allowing this evidence in the circumstances of this case.[9]

For the reasons stated above, we affirm the judgment of the district court.

---

[9]On October 16, 1996, the Supreme Court heard arguments in Old Chief v. United States, 116 S. Ct. 907 (1996) (granting petition for writ of certiorari), on the issue of whether the government has to accept a § 922(g)(1) defendant's stipulation that he had been convicted of a felony, thus preventing the government from presenting specific evidence of the prior felony. See 60 Crim. Law Rep. 3055 (Oct. 23, 1996). In the instant case, Mosby did not offer to stipulate that he was a felon, and instead forced the government to carry its burden of proving this element of his crime. In light of this distinction, we do not believe that it is necessary or prudent to delay our consideration of Mosby's appeal pending the decision in Old Chief.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.