# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-2626

———————

Darold Maxfield,

   Appellant,

  v.

Cintas Corporation, No. 2,

   Appellee.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Eastern District of Arkansas.

———————

Submitted: January 8, 2007
Filed: June 14, 2007

———————

Before COLLOTON and GRUENDER, Circuit Judges, and GOLDBERG, Judge.[1]

———————

COLLOTON, Circuit Judge.

This case comes to us for a second time. The lawsuit arises from a dispute between Darold Maxfield and his former employer, Cintas Corporation No. 2 ("Cintas"). After Cintas terminated Maxfield's employment in August 2002, Maxfield brought this action alleging race discrimination and violations of the Uniform Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, *et seq.* The district court granted summary judgment for Cintas on all claims.

———————

[1]The Honorable Richard W. Goldberg, Judge for the United States Court of International Trade, sitting by designation.

In a prior opinion, we affirmed the dismissal of the race-discrimination claims, but reversed and remanded for further proceedings on Maxfield's claims under USERRA. *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544 (8th Cir. 2005) ("*Maxfield I*").

On remand, the district court again granted summary judgment for Cintas on the USERRA claims, and Maxfield appeals. We conclude that Cintas's second motion for summary judgment presented the same legal issue that we resolved in our first decision on an evidentiary record that is not substantially different from the record that we considered originally. Accordingly, the law of the case dictates that the motion for summary judgment should have been denied. We therefore reverse the district court's grant of summary judgment and remand the case for trial on Maxfield's claims under USERRA.

I.

The facts of the case are set forth at length in our opinion in *Maxfield I*. Briefly, as they relate to the USERRA claims, Maxfield has served in the United States Army, either in active duty or reserve status, since 1985. He was hired by Cintas in July 1999 as a service sales representative. He then accepted positions in February 2000 as a production supervisor and in May 2000 as a facility outside sales representative (FOS). In July 2001, Randy Lewis, general manager of Cintas's facility in Maumelle, Arkansas, granted Maxfield a military leave-of-absence for reserve duty from July 15 to September 28, 2001. When Maxfield returned from duty in August 2001, Cintas transferred him from the FOS position to the position of proactive service trainer (PST). On January 24, 2002, Cintas granted Maxfield a military leave of absence through June 15, 2002. In March 2002, Cintas eliminated the PST position, and when Maxfield returned from military leave, Cintas placed him in a telemarketing position. On August 19, 2002, Cintas approved military leave for Maxfield on August 19, 20, and 23, 2002. After a dispute over whether Maxfield improperly sought to use

vacation leave and "sick/emergency" leave while on military leave for the three days in August, Cintas terminated Maxfield on August 30, 2002.

Maxfield alleges that Cintas discriminated against him based on his military service when the company transferred him in August 2001, and when it terminated him in August 2002. In our first opinion, we held that by transferring Maxfield from the FOS position to the PST position, Cintas denied him a "benefit of employment" within the meaning of USERRA. *Maxfield I*, 427 F.3d at 551-52. We further held that Maxfield presented sufficient evidence to support a finding that his military status was a motivating factor in Cintas's decision to transfer him, and that the burden of proof shifted to Cintas to show that it would have taken the same action absent Maxfield's military status. *Id*. at 552; *see Gagnon v. Sprint Corp.*, 284 F.3d 839, 854 (8th Cir. 2002) (explaining that unlike the burden-shifting framework used in Title VII cases, USERRA shifts the burden of persuasion, as well as production, to the employer), *abrogated on other grounds, Desert Place, Inc. v. Costa*, 539 U.S. 90 (2003). We concluded that although Cintas claimed that it transferred Maxfield because he incurred four consecutive months of sales deficits in the FOS position, there was still a genuine issue of fact whether Maxfield's reserve status was a motivating factor in the transfer. *Maxfield I,* 427 F.3d at 553.

With respect to Maxfield's termination, we held Maxfield satisfied his initial burden to show a genuine issue of material fact that his military status was a motivating factor in Cintas's decision to terminate him, and that the burden of proof shifted to Cintas to show that it would have made the decision absent Maxfield's military status. *Id*. at 554. We then stated that Cintas's evidence concerning the circumstances of Maxfield's leave requests was sufficient to create a genuine issue of fact as to whether Cintas would have terminated Maxfield in any event, and remanded the case for further proceedings. *Id*.

On remand, Cintas moved again for summary judgment on the USERRA claims. In support of its motion, Cintas produced an affidavit from Lewis, the general manager, which was generated after our first decision. In that affidavit, Lewis asserted that even had Maxfield not been associated with the military in any way, Lewis would have made the same decision to transfer Maxfield from the FOS position to the POS position in August 2001, and to discharge him in August 2002. The district court, relying on the Lewis affidavit, concluded that Maxfield had failed to come forward with any evidence to establish a genuine issue of material fact as to whether Cintas would have taken the same employment actions, even absent his military status. The court granted summary judgment and dismissed the complaint.

II.

Because this appeal follows a previous decision of another panel concerning whether Cintas was entitled to summary judgment on Maxfield's USERRA claims, two longstanding rules of practice are implicated. The first – the law-of-the-case doctrine – provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. and Urban Dev.*, 807 F.2d 1433, 1440-41 (8th Cir. 1986) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). This doctrine "prevents the relitigation of settled issues in a case, thus protecting the settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency." *Id*. We will consider a previously decided issue under the law-of-the-case doctrine "only if substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice." *Id*; *see Houghton v. McDonnell Douglas Corp.*, 627 F.2d 858, 864 (8th Cir. 1980) (*quoting Pyramid Life Ins. Co. v. Curry*, 291 F.2d 411, 414 (8th Cir. 1961)). The second applicable principle – the "prior panel rule" – provides that one panel of this court has no authority to overrule an earlier decision of another panel. This rule reinforces the law-of-the-case doctrine when a case returns to a panel of this court after a prior

decision. *E.g.*, *United States v. Mosby*, 101 F.3d 1278, 1279 n.3 (8th Cir. 1996); *cf. Liberty Mut. Ins. v. Elgin Warehouse & Equip.*, 4 F.3d 567, 571 n.7 (8th Cir. 1993). Because the court has a strong interest in avoiding repetitive litigation, we may raise these doctrines *sua sponte*. *See DiLaura v. Power Auth. of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992); *Bollinger v. Oregon*, 172 Fed. App'x 770, 771 (9th Cir. 2006) (unpublished); *cf. Wilson v. United States*, 166 F.2d 527, 528 (8th Cir. 1948) ("Although counsel for appellee has not suggested by motion or otherwise, either in the trial court or in this court, that the appeal is barred, we are of the opinion that it is barred by the doctrine of res judicata, and that we should so hold.").

Having thoroughly reviewed our prior decision in this case, and the arguments and evidence presented by the parties at the various stages of the litigation, we conclude that our decision in *Maxfield I* dictates that the grant of summary judgment for Cintas must be reversed. Cintas presents the same arguments in support of summary judgment that we rejected on the first appeal, and the evidence of record is not substantially different from that considered by the court in *Maxfield I*. To explain our conclusion, we set forth a comparison of Cintas's present position with the matters considered and resolved in our prior decision.

Cintas now argues that it is entitled to summary judgment on Maxfield's claims under USERRA, because even though a reasonable jury could find that Cintas was motivated by Maxfield's military status, no reasonable jury could reject Cintas's argument that it would nonetheless have taken the adverse employment actions for permissible reasons. Cintas says that it would have implemented the job transfer in August 2001 because Maxfield experienced negative sales commissions for four consecutive months in 2001. The company argues that it would have terminated Maxfield in August 2002, because he deviated from proper procedure when he sought to substitute paid sick leave and vacation leave for military leave, and "attempted to gain extra paid days off by fraudulent means." (Appellee's Br. 23). These precise

arguments were advanced as grounds for affirming the district court's grant of summary judgment on the first appeal, and we rejected them.

In its first appellate brief, Cintas argued as follows:

> Even assuming that Maxfield is able to meet his initial burden of showing that his military activities were a substantial or motivating factor in Cintas' decision to transfer him in August of 2001 and to discharge him in August of 2002, *the evidence shows that Cintas has met its burden of showing that it would have taken those employment actions even if Maxfield had not engaged in military activities protected by USERRA and that both employment actions were taken for valid reasons. Gagnon v. Sprint Corp.*, 284 F.3d at 854. *Indeed, Maxfield freely admits that he had negative sales commissions for four consecutive months in 2001 and that he requested that he be allowed to collect sick pay and vacation pay for the time he was on military duty in August of 2002.*

(Appellee's Br. 24-25, *Maxfield I*) (emphasis added). With respect to the termination and Maxfield's use of leave, Cintas argued that "it is not a question of what leave was available, *but Cintas' concern regarding Maxfield's dishonesty and violation of company policy when Maxfield attempted to circumvent Cintas' system.*" (*Id*. at 21) (emphasis added).

Judge McMillian's opinion for the court rejected these arguments. As to the job transfer, the opinion stated:

> Because Maxfield presented sufficient evidence showing that his military service was a motivating factor in Cintas's decision to transfer him to the PST position, the burden shifted to Cintas to show that it would have taken the same action absent Maxfield's military status. *Cintas recites that it transferred Maxfield because of four consecutive months of deficits. However, an employer violates USERRA "when a person's military service is a 'motivating factor' in the discriminatory action, even if it is not the sole factor."* Nor does Cintas offer any other

evidence that it would have taken the same action absent Maxfield's reserve status. "Because [Maxfield's] transfer . . . must be viewed as a denial of a benefit of employment and *because there is a question of fact whether [Maxfield's] [r]eserve status was a motivating factor in the transfer, the grant of summary judgment to [Cintas] on this claim must be reversed*."

*Maxfield I*, 427 F.3d at 552-53 (emphasis added) (citations omitted).

With respect to Maxfield's termination, the opinion stated:

We also agree with Maxfield that the district court erred in holding that he failed to present sufficient evidence that his military status was a motivating factor in Cintas's decision to terminate him. As to proximity, Maxfield was suspended the day he returned from the three-day leave and discharged a few days later. . . . Moreover, there are numerous inconsistencies in Lewis's explanation that Maxfield violated company policy by requesting emergency and vacation leave while on military leave. . . . There are also inconsistencies in Lewis's explanation that Maxfield had been dishonest in devising a scheme to "steal" extra sick and vacation days by requesting leave from Anderson. . . .

Nor, as Cintas argues, does the fact that it granted Maxfield 15 military leaves of absence in 3 years negate a showing of a discriminatory motive. Indeed, a jury could infer that because it had granted the leaves, many of which were, in Lewis's words, "last minute," Cintas was looking for a reason to discharge Maxfield because of the large number of absences from work due to Maxfield's reserve status. . . .

Because Maxfield satisfied his initial burden to show a genuine issue of material fact concerning Cintas's motivation, the burden of production and persuasion shifted to Cintas to show that it would have terminated Maxfield even in the absence of his military status. We believe that Cintas's evidence concerning the circumstances of Maxfield's leave request is sufficient *to create a genuine issue of fact as to whether it would have terminated Maxfield in any event*.

*Maxfield I*, 427 F.3d at 553-54 (emphasis added).

Cintas then filed a petition for rehearing en banc in which it reiterated its argument that Maxfield was terminated for a permissible reason. Cintas maintained that "Maxfield was terminated because he attempted to take the three days of military duty as paid days after he had already told his direct supervisor that he was taking them as unpaid days," that Maxfield "knew the proper procedure to follow" for taking paid leave, and that when Maxfield "attempted to circumvent that procedure, he was engaged in purposeful fraud." (Appellee's Pet. for Reh'g En Banc, 13-14, *Maxfield I*). The petition for rehearing en banc was denied, with no judge voting to grant it.

When this case was remanded to the district court, Cintas filed a second motion for summary judgment. Cintas made the same argument that it presented on pages 24-25 of its brief on the first appeal, *supra*, at 6, complete with a citation to the same page of the Federal Reporter:

> "[F]or purposes of this Second Motion, Cintas assumes that the Plaintiff has properly made out a *prima facie* case that Cintas violated USERRA when it transferred him in July/August of 2001 and when it terminated him in August of 2002. *The undisputed material facts, however, show that Cintas is able to meet its burden of proving that it would have taken the same actions notwithstanding the Plaintiff's military service or military activities.* *Gagnard* [sic] *v. Sprint Corp.*, 284 F.3d at 854.

(Mem. in Supp. of Def's Second Mot. for Summ. J. at 9, *Maxfield v. Cintas Corp. No. 2*, No. 03-576, 2006 WL 1489172 (E.D. Ark. May 25, 2006) (emphasis added)). This argument was rejected by our court in *Maxfield I*, where we stated that there were genuine issues of fact for trial with respect to both the job transfer and the termination. 427 F.3d at 553-54.

In seeking to distinguish our first opinion, Cintas relies on the affidavit of general manager Lewis, produced after the remand to the district court, in which Lewis asserts that he would have made the same employment decisions absent Maxfield's military status. This affidavit is insufficient to justify permitting Cintas

to relitigate issues previously decided against it. It does not include "substantially different" evidence that might warrant reconsideration of an issue previously resolved. *See Little Earth of United Tribes, Inc.*, 807 F.2d at 1441. The Lewis affidavit simply repackages evidence from Lewis's deposition and other documents that were presented unsuccessfully by Cintas during the first appeal in 2005.

Specifically, on the transfer claim, Lewis states that "had Maxfield not been associated with the military in any way, had he not had to be away from work for military reasons, and had he incurred four consecutive months of negative commissions as he did in the spring and summer of 2001, I would have made the same decision." (App. 537). This is not substantially different evidence. The record on the first appeal included the same information regarding Maxfield's sales commissions in May, June, July, and August 2001, (*id.* at 61-62, 329), and it included Cintas's assertion that Maxfield was transferred for this reason. (*Id.* at 62, 336). Indeed, in its brief on the first appeal, Cintas relied on this evidence to make the same argument that it now advances: "The only reason for Maxfield's transfer from the FS Sales position to the PST position was Maxfield's having negative commission draws for four consecutive months in the FS Sales position. (App. 62)." (Appellee's Br. 4, *Maxfield I*). The company followed with its contention that "Cintas has met its burden of showing that it would have taken those employment actions even if Maxfield had not engaged in military activities protected by USERRA and that both employment actions were taken for valid reasons." (*Id.* at 24-25).

On the termination claim, Cintas cites the Lewis affidavit for evidence that Maxfield was terminated because he had "purposefully tried to obtain additional paid days off by fraudulent means," and was "trying to steal paid days off from Cintas," (App. 542), when he allegedly deviated from proper procedure by failing to inform his supervisor that he intended to use vacation or sick/emergency leave during his military leave in August 2002. This is not substantially different evidence. In his deposition, which was considered in the first appeal, Lewis testified that "the whole

heart of the case" was that Maxfield was required to ask his supervisor for permission to take vacation leave, (*id*. at 265), that "Darold Maxfield didn't come ask me," but "went to a payroll clerk and said, I was out sick," (*id*. at 272), and that "I think the intent was to go behind my back to a payroll clerk, thinking that I'll tell them that I was out sick, I'll get paid and it's not recorded and so I've got extra days out there." (*Id*.). Lewis averred that he decided Maxfield "had an intent to commit a crime of theft." (*Id*.). The record on the first appeal included a memorandum from Lewis dated August 27, 2002, asserting that Maxfield committed a "serious 'violation of company policy'" by requesting sick leave and vacation leave "without the knowledge of his supervisor." (*Id*. at 218-19).

Cintas contends that Lewis's affidavit on remand adds his personal assertion that he would have made the same decisions even if Maxfield had not been associated in any way with the military. But Lewis asserted all along that his decision had "nothing to do with the military," and that "[t]here's nothing military about this," (*id*. at 278), so we fail to see how the affidavit presents substantially different evidence on this score. In any event, our decision in the first appeal did not turn on the absence of a specific statement by an employee of Cintas that the company would have made the same decision anyway. We fully considered the company's assertion that it would have transferred and terminated Maxfield absent his military service, but to prevail as a matter of law, Cintas must show that its defense is so strong that any reasonable jury must accept it. We determined previously that Maxfield's evidence that military service was a motivating factor, along with evidence of inconsistencies in Lewis's explanations, created a genuine issue of fact as to whether Cintas could meet its burden of proof. That Lewis now makes the assertion in his affidavit simply puts his credibility at issue in the same way that his credibility and the credibility of the company's assertion were at issue on the first appeal. We have held already that countervailing evidence creates a genuine issue for trial as to whether the company's explanations are to be believed, *Maxfield I*, 427 F.3d at 553-54, and that decision dictates the same conclusion at this stage of the proceedings.

                              *       *       *

        For the foregoing reasons, we reverse the judgment of the district court and remand the case for trial on Maxfield's claims under USERRA.


GRUENDER, Circuit Judge, dissenting.


        Because I do not agree that the district court overruled a rule of law established in a previous panel opinion, I would affirm the grant of summary judgment for the reasons stated by the district court. Therefore, I respectfully dissent.


        "The doctrine of the law of the case . . . is a doctrine of discretion and provides that when a court decides a rule of law, that decision should govern the same issues in subsequent stages in the same case." *UniGroup, Inc. v. Winokur*, 45 F.3d 1208, 1211 (8th Cir. 1995). The doctrine "prevents the relitigation of settled issues in an action, thus protecting the expectations of the parties, ensuring uniformity of decisions and promoting judicial efficiency." *Id.* As the Court notes, because this case follows a decision of a prior panel, the prior panel rule applies to like effect. *See Mosby*, 101 F.3d at 1279 n.3.


        The rule of law established in the first appeal and allegedly overruled by the district court is that, on the record before the district court on the first motion for summary judgment, genuine issues of material fact precluded summary judgment on same-decision grounds. The factual record at the time of the first summary judgment motion was developed completely around the issue of potential racial or military-service animus underlying Cintas's actions, rather than a USERRA same-decision defense. Cintas's arguments in the first appeal for the same-decision alternative were just that—arguments by counsel, drawing some inferential factual support from Lewis's deposition testimony about the motivation for his decisions regarding Maxfield's transfer and termination. However, there was no evidence in the record

                                    -11-

at that time tying Lewis's statements to the particular circumstances, if any, that would have led Cintas to make the same decision absent Maxfield's military service.

On remand after the first appeal, the district court reopened discovery and set a deadline for new dispositive motions. The district court did not limit the new round of discovery and dispositive motions to new theories or to evidence that could not previously have been discovered. There is no suggestion in the record that Maxfield objected to this procedure in district court, and he does not challenge it on appeal. From the state of the record at that time, one might infer that both parties felt the record needed development on the same-decision issue before the case could proceed further. Accompanying Cintas's second summary judgment motion, the Lewis affidavit introduced into the record for the first time a sworn statement from a decision-maker that Cintas would have made the same decision regardless of any potential military-service animus, as well as what the particular basis for that decision would have been. While the affidavit closely paralleled arguments advanced by Cintas in the first appeal, as recited at length by the Court *ante*, arguments made by counsel on appeal are not part of the factual record. In my view, the Lewis affidavit provides an evidentiary link between the events surrounding Maxfield's transfer and termination and Cintas's decision-making practices that was not present in the first summary judgment record. Certainly neither Maxfield nor the district court noticed any conflicts with the law of the case established by the prior panel decision. At the very least, therefore, it appears that "the expectations of the parties" were not upset. *UniGroup*, 45 F.3d at 1211.

In summary, the mandate of the prior panel did not preclude, and neither party objected to, the district court's order for another round of discovery and dispositive motions. Following the district court's order, Cintas presented a sworn statement from a decision-maker (which was not rebutted by Maxfield) explaining precisely why it would have made the same decisions to transfer and terminate Maxfield regardless of potential military-service animus. At that point, the rule of law established in the

-12-

first appeal no longer controlled the district court's consideration of a summary judgment motion on the same-decision issue.  Therefore, I respectfully dissent from the Court's application of the doctrines of law of the case and the prior panel rule to this case, and I would affirm the judgment of the district court.

_____