# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3109

_____

Sprint Communications Company, L.P.

*Plaintiff - Appellant*

v.

Elizabeth S. Jacobs; Geri D. Huser;[1] Nick Wagner, in their official capacities as members of the Iowa Utilities Board

*Defendants - Appellees*

v.

Windstream Iowa Communications, Inc.; Office of Consumer Advocate

*Intervenor Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 14, 2015
Filed: August 14, 2015

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

[1]Board member Huser is substituted for her predecessor in accordance with Federal Rule of Appellate Procedure 43(c)(2).

WOLLMAN, Circuit Judge.

As explained below, this case is before us yet again, with the present proceeding being an appeal by Sprint Communications Company, L.P. (Sprint) from the dismissal of its complaint against members of the Iowa Utilities Board (the Board). We reverse and remand for further proceedings.

Under the Telecommunications Act of 1996, local exchange carriers such as Windstream Iowa Communications, Inc. (Windstream) must connect calls made to their customers by the customers of national telecommunications companies such as Sprint. Prior to 2009, Sprint paid Windstream state access charges for connecting nonnomadic intrastate long-distance VoIP calls—that is, calls made by cable-telephone customers over the Internet in Iowa, delivered to Sprint for format conversion, and then transferred to Windstream for delivery to its telephone customers in Iowa. In 2009, Sprint began withholding payment of state access charges for these calls, claiming that VoIP calls were "information services" and that payment to Windstream thus should be governed by a reciprocal compensation agreement between the parties, not by state access charges. In response, Windstream threatened to block Sprint traffic from reaching Windstream's customers.

The dispute was presented to the Board for resolution. In February 2011, the Board found that the calls at issue were telecommunications services subject to state regulation, not information services, and ordered Sprint to pay Windstream all unpaid state access charges. Sprint petitioned for review of the Board's decision in Iowa state trial court. At the same time, Sprint brought an action in federal court against members of the Board,[2] seeking to enjoin the Board's decision. The district court

---

[2]Both Windstream and the Office of Consumer Advocate, a division of the Iowa Department of Justice, later intervened as defendants.

abstained because of the parallel state proceedings, a ruling that we affirmed in Sprint Communications Co. v. Jacobs, 690 F.3d 864 (8th Cir. 2012), only to have our judgment reversed by the Supreme Court in Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584 (2013). By the time the case returned to the district court following our remand order, the state trial court had upheld the Board's decision, including its determination that VoIP calls were not information services preempted from state regulation. The district court dismissed Sprint's complaint, holding that issue preclusion barred Sprint from raising the same arguments in federal court that the state trial court had already addressed.

Sprint appeals, arguing that although the elements of issue preclusion are met, we should not give preemptive effect to the state trial court's decision in this case. We review this issue of law *de novo*. See Hines v. Anderson, 547 F.3d 915, 920 (8th Cir. 2008).

Sprint relies on Iowa Network Services, Inc. v. Qwest Corp., 363 F.3d 683, 690 (8th Cir. 2004), in which we held that a decision by the Board interpreting the Telecommunications Act did not have preclusive effect in federal court. Here, the issue is whether preclusive effect should be given to a state-court decision, not that of the Board. Federal courts must accord state-court decisions "full faith and credit" under 28 U.S.C. § 1738, whereas the common law governs the preclusive effect of administrative decisions. See Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107, 109 (1991). None of the defendants argued in their briefs that this distinction mattered, however. Moreover, at oral argument, defense counsel expressly disclaimed any reliance on this distinction, arguing instead that the preclusive effect of a state-court decision under § 1738 is the same as that of an agency decision under the common law. We will thus assume—without deciding—that the Iowa Network Services framework applies here.

In Iowa Network Services, the parties disputed whether certain mobile calls were local calls or long-distance calls under the Telecommunications Act. 363 F.3d at 687. If the calls were local, the parties would be required to enter a reciprocal compensation agreement, which would govern payment for the calls; if the calls were long distance, payment for the calls would be governed by state access charges. Id. The Board determined that the calls at issue were local calls and that compensation should thus be governed by a reciprocal compensation agreement. Id. at 688-89. The local exchange carrier then filed a collection action in federal district court, seeking unpaid state access charges based on its argument that the calls were long distance. Id. at 689. The district court held that because the Board had already determined that the calls were local and not long distance, the claims were barred by res judicata. Id. at 689. We reversed. Id. at 685. We recognized that unreviewed state administrative decisions should be given preclusive effect unless Congress intended otherwise and held that "Congress intended to supplant the common law principles of claim preclusion when it enacted the [Telecommunications] Act, at least with respect to the issues here involved." Id. at 690. We further recognized that "[f]ederal courts have the ultimate power to interpret provisions of the [Telecommunications] Act," id. at 692, and that "if the federal courts believe a state commission is not regulating in accordance with federal policy they may bring it to heel," id. at 693 (quoting AT & T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 378 n.6 (1999)). We reasoned that by adopting the Telecommunications Act, "Congress greatly expanded the federal government's involvement in the telecommunications industry, even into areas . . . that previously had been left to state regulation." Id. at 690. We emphasized that the Board had determined that payment for the traffic should be governed by a reciprocal compensation agreement, the terms of which would eventually be subject to federal review (after the parties entered into a reciprocal compensation agreement and had it approved or rejected by the Board). Id. at 691-692. Because the Board's determination that the traffic was local would not have preclusive effect during federal-court review of the terms of a reciprocal compensation agreement, we reasoned that it did not have preclusive effect in the collection action. Id. at 692.

-4-

Sprint argues that the issue before the state court in this case is similar to the issue before the Board in Iowa Network Services; consequently, preclusion principles should not bar federal-court review of the issue here. As in Iowa Network Services, the issue in the state proceedings in this case was whether payment for certain traffic should be governed by a reciprocal compensation agreement under section 251 of the Telecommunications Act or by state access charges. But here, the Board determined (and the state court agreed) that the calls at issue were subject to state access charges; in Iowa Network Services, the Board determined that the calls at issue should be governed by a reciprocal compensation agreement. Sprint argues that whether a federal court is bound by issue-preclusion principles should not depend on the outcome in the state proceedings. We agree. Although in Iowa Network Services we relied on the fact that the issue decided by the Board would ultimately be subject to federal review once the parties entered a reciprocal compensation agreement, we held that Congress intended to supplant common-law preclusion principles "with respect to the *issues* here involved." Id. at 690 (emphasis added). Thus, the holding in Iowa Network Services that the Board's decision did not have preclusive effect in federal court depended on the issue the Board decided, not the Board's resolution of that issue.

Nevertheless, Windstream and the Board argue that Iowa Network Services is distinguishable for a different reason. At issue in Iowa Network Services was whether certain mobile calls "involved local traffic rather than long-distance toll service" under the Telecommunications Act "and as such, reciprocal compensation under § 251(b)(5) rather than [state] access charges applied to the traffic." Id. at 690. Here, Windstream and the Board argue that whether a reciprocal compensation agreement or state access charges applied to the traffic depended on the interpretation of state law, not federal law. We disagree. It is true that the Board determined that state law required Sprint to pay state access charges to Windstream for the VoIP calls at issue. But Sprint did not contest that state law required Sprint to pay Windstream state access charges. Rather, it argued that federal law preempted state law and

-5-

therefore that the state regulations were invalid as applied to the VoIP calls at issue. Sprint's preemption argument turned on a matter of federal law—that is, whether VoIP calls are information services or telecommunications services.[3]

In light of our holding in <u>Iowa Network Services</u>, we conclude that Congress did not intend that issue-preclusion principles bar federal-court review of the issue involved here: whether the nonnomadic intrastate long-distance VoIP calls at issue are information services, payment for which should be governed by a reciprocal compensation agreement, or telecommunications services subject to state access charges. We express no view on the merits of the parties' arguments. It is for the district court to determine in the first instance whether the calls are information services or telecommunications services.

The judgment of the district court is reversed, and the case is remanded for further proceedings.

_____

[3]Windstream and the Board recognize that the Board spent most of its opinion analyzing decisions by federal courts and the Federal Communications Commission. They argue, however, that the Board merely analyzed federal law to determine that it had jurisdiction. Whether the Board had jurisdiction, however, was intertwined with the ultimate issue: whether state access charges applied to the traffic.