# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1417
_____

Sprint Communications Company, L.P.

*Plaintiff - Appellant*

v.

Richard W. Lozier, Jr.;[1] Nick Wagner; Geri Huser, in their official capacities as members of the Iowa Utilities Board

*Defendants - Appellees*

v.

Windstream Iowa Communications, Inc.; Office of Consumer Advocate

*Intervenor Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 11, 2017
Filed: June 23, 2017

_____

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

_____

---

[1]Board member Richard W. Lozier, Jr., is substituted for his predecessor, Elizabeth S. Jacobs. See Fed. R. App. P. 43(c)(2).

WOLLMAN, Circuit Judge.

Having previously come before us on issues of abstention, Sprint Commc'ns Co. v. Jacobs, 690 F.3d 864 (8th Cir. 2012) (Sprint I), rev'd sub nom. Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584 (2013), and issue preclusion, Sprint Commc'ns Co. v. Jacobs, 798 F.3d 705 (8th Cir. 2015) (Sprint II), this case now presents the question whether the Telecommunications Act of 1996 (Telecommunications Act or Act), preempts the Iowa Utilities Board's (Board's) authority to compel Sprint Communications Company, L.P. (Sprint) to pay intrastate access charges to Windstream Iowa Communications, Inc. (Windstream, formerly Iowa Telecom). On cross-motions for summary judgment, the district court[2] determined that the Act preserved the Board's authority and that Sprint thus was not entitled to declaratory or injunctive relief. It granted the Board's and Windstream's motions for summary judgment and denied Sprint's motion. We affirm.

Years ago, Sprint partnered with MCC Telephony of Iowa, L.L.C. (Mediacom) to provide Voice over Internet Protocol (VoIP) voice telephony to Mediacom's customers. The VoIP calls at issue in this case were nonnomadic, intrastate long-distance calls—that is, the calling and the called parties were situated in fixed geographic locations in different exchanges in Iowa.

The VoIP calls originated on Mediacom's cable network in Internet Protocol (IP) format. They were then routed to Sprint, which converted them from IP format to Time Division Multiplexing format for delivery on the Public Switched Telephone Network (PSTN). After Sprint converted the format, it delivered the calls to Windstream on exchange access trunks, over which Sprint routed long-distance calls. Windstream then connected the calls to end users. For years, Sprint paid Windstream

---

[2]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

intrastate access charges based on the rates set forth in the tariff that Windstream had submitted to the Board.

Sprint adopted the position in 2009, however, that the calls were not subject to intrastate access charges, claiming that the Telecommunications Act preempted state regulation of VoIP traffic. Sprint discontinued paying the intrastate access charges to Windstream and also began withholding payment of other, undisputed amounts. Sprint explained that withholding such additional payments allowed it to recover the intrastate access charges that it erroneously had paid over the years. In response, Windstream threatened to discontinue access service to Sprint, which would block calls that Sprint routed to Windstream.

Sprint filed a complaint with the Board, alleging that Sprint had properly disputed the intrastate access charges and that its decision to withhold payment was appropriate under Windstream's tariff. Sprint requested emergency relief to prevent Windstream from blocking calls. Windstream thereafter agreed to continue to provide access service to Sprint as long as Sprint remained current on newly billed intrastate access charges. Sprint then moved to withdraw its complaint, arguing that its claim was no longer ripe because Windstream's agreement to continue to provide access service granted Sprint the relief it had requested from the Board. The Board granted Sprint's motion to withdraw the complaint, but nonetheless decided to reach the merits of the underlying dispute, "*i.e.*, whether VoIP calls are subject to intrastate regulation." Sprint Commc'ns, Inc., 134 S. Ct. at 589. Sprint argued that the Board lacked jurisdiction to decide the underlying dispute, which Sprint described as "whether it [was] proper for [Windstream] to charge traditional access charges on the traffic [that] originated as" VoIP traffic. The Board "disagreed, ruling that the intrastate fees applied to VoIP calls." Sprint Commc'ns, Inc., 134 S. Ct. at 589. The Board later denied Sprint's application for reconsideration.

-3-

In April 2011, Sprint filed suit in federal district court against members of the Board in their official capacities, seeking a declaration that the Board's order compelling Sprint to pay intrastate access fees was contrary to federal law, as well as an injunction prohibiting the Board from enforcing its order. Sprint's complaint set forth one count, entitled "Preemption of State Regulation of Information Services." Sprint maintained that the disputed intrastate long-distance VoIP calls were "information services" under the Communications Act of 1934, as modified by the Telecommunications Act, and that the Communications Act preempted the authority of state utilities commissions to regulate information services. The district court permitted Windstream and the Iowa Office of Consumer Advocate to intervene and participate in the litigation.

The same day it filed its federal complaint, Sprint also petitioned for review of the Board's order in Iowa state court. The federal district court initially abstained from exercising jurisdiction and dismissed the case without prejudice. On appeal, we affirmed the decision to abstain, but vacated the judgment of dismissal and remanded the case to the district court with instructions to enter a stay of proceedings. Sprint I, 690 F.3d at 869. The Supreme Court granted Sprint's petition for certiorari, concluded that abstention was inappropriate, and reversed our judgment. Sprint Commc'ns, Inc., 134 S. Ct. at 593-94. We thereafter vacated our panel opinion, again reversed the judgment of dismissal, and remanded the case to the district court for further proceedings. Sprint Commc'ns Co. v. Jacobs, 746 F.3d 850 (8th Cir. 2014).

While the United States Supreme Court was considering the abstention question, the state trial court ruled on Sprint's petition for review of the Board's order. As relevant here, the state court rejected Sprint's argument that the Board lacked "jurisdiction to approve and enforce [the] tariff that permitted [Windstream] to charge Sprint . . . *intra*state access charges on non-nomadic VoIP traffic." It affirmed the Board's order and later denied Sprint's motion for reconsideration.

-4-

The state trial court issued its ruling in September 2013, well before the federal case was remanded to district court following our March 2014 order.[3] On remand, the district court gave preclusive effect to the state trial court's determination that federal law did not preempt state regulation of intrastate VoIP traffic and thus dismissed Sprint's federal complaint for failure to state a claim. We reversed and remanded, "conclud[ing] that Congress did not intend that issue-preclusion principles bar federal-court review of the issue involved here." Sprint II, 798 F.3d at 708. While we expressed no view on the merits of the case, we framed the issue as "whether the nonnomadic intrastate long-distance VoIP calls at issue are information services, payment for which should be governed by a reciprocal compensation agreement, or telecommunications services subject to state access charges." Id. On remand, the district court did not decide whether the calls were information services or telecommunications services. It determined instead that § 251(g) of the Telecommunications Act preserved state authority to regulate the VoIP calls, regardless of their classification, and that the Act "did not preempt the state tariffs [under which] Sprint was charged." D. Ct. Order of Dec. 30, 2015, at 13.

Sprint argues that the district court erred in declining to classify the nonnomadic, intrastate long-distance VoIP calls as information services or telecommunications services. According to Sprint, our articulation of the issue presented was essential to the holding in Sprint II and thus constituted the law of the case. Sprint contends that "the upshot of the binding formulation that this Court provided . . . was that, if the calls at issue were . . . information service[s]," the Act's reciprocal compensation regime applied and Windstream's intrastate access charges did not. Appellant's Br. 22 (citing 47 U.S.C. § 251(b)(5)).

---

[3]Sprint filed a notice of appeal from the state-court order with the Iowa Supreme Court in April 2014 and voluntarily dismissed that appeal in March 2015.

The law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev., 807 F.2d 1433, 1441 (8th Cir. 1986) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)); see also Bethea v. Levi Strauss & Co., 916 F.2d 453, 456 (8th Cir. 1990) ("When an appellate court remands a case to the district court for further proceedings consistent with the appellate decision, all issues the appellate court decides become the law of the case."). "This doctrine 'prevents the relitigation of settled issues in a case, thus protecting the settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency.'" Maxfield v. Cintas Corp., No. 2, 487 F.3d 1132, 1135 (8th Cir. 2007) (quoting Little Earth of the United Tribes, 807 F.2d at 1441). "The doctrine of law of the case comes into play only with respect to issues previously determined[,]" however. Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979). When we remand a case, the district court "may consider and decide any matters left open by the mandate." See id. (quoting In re Sanford Fork & Tool Co., 160 U.S. 247, 256 (1895)).

In Sprint II, "[w]e express[ed] no view on the merits of the parties' arguments." 798 F.3d at 708. We held that preclusive effect must not be given to the state court's determination that "VoIP calls were not information services preempted from state regulation." Id. at 706. Although we characterized the "issue involved" in the case as being "whether VoIP calls are information services or telecommunications services," id. at 708, Sprint II did not require the district court to classify the calls. The decision instead left open the broader question whether the Telecommunications Act preempted the Board's authority to enforce its order. Contrary to Sprint's argument, the district court was free to consider the parties' arguments and decide the preemption issue set forth in Sprint's federal complaint unconstrained by Sprint II.

Turning to the merits of Sprint's preemption argument, we look to § 251 of the Telecommunications Act. Section 251(b)(5) assigns local exchange carriers "[t]he

duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications." Charges incurred pursuant to reciprocal compensation arrangements are different from intrastate access charges, like those that Sprint had paid pursuant to Windstream's tariff. Sprint argues that § 251(b)(5) applies in this case and that it "does *not* permit parties to rely on tariffs for compensation." Appellant's Br. 14. Because Windstream is a local exchange carrier that terminated calls on Sprint's behalf, Sprint argues that § 251(b)(5) required it to enter into a reciprocal compensation arrangement with Sprint.

Section 251(g), however, provides for the continued enforcement of exchange access and interconnection requirements that were in place before the passage of the Telecommunications Act. Specifically, it requires local exchange carriers like Windstream to continue "provid[ing] exchange access, information access, and exchange services for such access to interexchange carriers and information service providers in accordance with the same equal access and nondiscriminatory interconnection restrictions and obligations (including receipt of compensation) that apply to such carrier on the date immediately preceding February 8, 1996." 47 U.S.C. § 251(g). Those pre-Act restrictions and obligations apply until they "are explicitly superseded by regulations prescribed by the [FCC]." Id. "Section 251(g) thus preserved the pre-1996 Act regulatory regime that applie[d] to access traffic, including rules governing 'receipt of compensation,' and thereby precluded the application of section 251(b)(5) to such traffic 'unless and until the Commission by regulation should determine otherwise.'" Connect America Fund, 26 FCC Rcd. 17,663, 17,916 ¶ 763 (2011) (CAF Order) (quoting Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, 16 FCC Rcd. 9151, 9169 ¶ 39 (2001)), petitions for review denied sub nom., In re FCC 11-161, 753 F.3d

1015 (10th Cir. 2014). The FCC "explicitly superseded" the access charge regime in November 2011, when it released its Connect America Fund Order.[4]

Sprint argues that § 251(g) did not preserve state authority to enforce intrastate access charges on the type of VoIP calls at issue here. According to Sprint, § 251(g) preserved instead the enhanced service providers (ESP) exemption, which Sprint contends applies to the disputed intrastate long-distance VoIP calls. The FCC established the "so-called 'ESP exemption'" in 1983, when it adopted uniform rules related to access charges. CAF Order, 26 FCC Rcd. at 18,016 n.1959; see Amendments of Part 69 of the Commission's Rules Relating to Enhanced Service Providers, 3 FCC Rcd. 2631, 2631 ¶ 2 & n.8 (1988). ESPs had long been categorized as customers of telecommunications companies and had "been paying the generally much lower business service rates." CAF Order, 26 FCC Rcd. at 18,016 n.1959 (quoting MTS & WATS Market Structure, 97 F.C.C.2d 682, 715 ¶ 83 (1983)); see Peter W. Huber, et al., 2 Federal Telecommunications Law § 12.6.2 (2d ed. 2011). The FCC thus decided to exempt ESPs from paying access charges, "recogniz[ing] that certain 'users who employ exchange service for jurisdictionally interstate communications,' . . . 'would experience severe rate impacts were [the FCC] immediately to assess carrier access charges upon them.'" CAF Order, 26 FCC Rcd. at 18,016 n.1959 (quoting MTS & WATS Market Structure, 97 F.C.C.2d at 715 ¶ 83). The FCC reaffirmed the ESP exemption after the passage of the Telecommunications

---

[4]The FCC determined that § 251(b)(5) applied to all telecommunications traffic and "adopt[ed] a prospective intercarrier compensation framework that br[ought] all VoIP-PSTN traffic within the section 251(b)(5) framework." CAF Order, 26 FCC Rcd. at 18,008 ¶ 943. The FCC has defined "VoIP-PSTN traffic" as "traffic exchanged over PSTN-facilities that originates and/or terminates in IP format." Id. at 18,006 ¶ 940 (citation omitted). The CAF Order thus ended the ongoing compensation dispute between Sprint and Windstream, with the result that this case involves only those intrastate access charges incurred from 2009, when Sprint discontinued payment, to 2011, when Windstream modified its tariff to comply with the CAF Order.

Act, when it ruled that the existing price structures for information service providers (ISPs) should remain in place and prohibited incumbent local exchange carriers from assessing interstate access charges on ISPs.[5] Access Charge Reform, 12 FCC Rcd. 15,982, 16,133 ¶ 344 (1997) ("We conclude that . . . incumbent [local exchange carriers] will not be permitted to assess interstate per-minute access charges on ISPs.").

The ESP exemption previously applied only to interstate access charges, and we decline Sprint's invitation to extend it to the intrastate access charges that the Board seeks to enforce in this case. Sprint asks us to infer from the CAF Order that the ESP exemption applied to pre-1996 intrastate communications, but the FCC did not indicate any intention to address that issue. To the contrary, the CAF Order provides, "We do not address preexisting law, including whether or how the ESP exemption might have applied previously, and we make clear that, whatever its possible relevance historically, the ESP exemption is not relevant or applicable prospectively in determining the intercarrier compensation obligations for VoIP-PSTN traffic." See CAF Order 26 FCC Rcd. at 18,008-09 ¶ 945; see also id. at 18,009 n.1905 ("Because we are bringing all traffic within section 251(b)(5), the ESP Exemption from interstate access charges does not apply by its terms."). Because the CAF Order does not address the issue, and because Sprint has not cited persuasive or controlling authority to support its contention that the ESP exemption precluded the application of intrastate access charges, we reject Sprint's argument that federal law exempted Sprint from having to pay intrastate access charges. See California v. FCC, 905 F.2d 1217, 1240 (9th Cir. 1990) (holding that intrastate enhanced services were "place[d] squarely within the regulatory domain of the states").

---

[5]"Information services" include all "enhanced services," and the distinction between the two definitions is not relevant here. See Huber, supra, § 12.2.1.

Having determined that the ESP exemption does not apply, we consider "whether there was a 'pre-Act obligation relating to intercarrier compensation for' particular traffic exchanged between a [local exchange carrier] and 'interexchange carriers and information service providers.'" CAF Order 26 FCC Rcd. at 18,015 ¶ 956 (quoting 47 U.S.C. § 251(g)). The FCC has rejected claims "that VoIP-PSTN traffic did not exist prior to the 1996 Act, and thus cannot be part of the access charge regimes 'grandfathered' by section 251(g)."[6] Id. Regardless of the classification of the calls as information services or telecommunications services, state law determined the pre-Act obligation relating to compensation for the intrastate traffic exchanged between Windstream and Sprint. See generally 47 U.S.C. § 152(b)(1). We conclude that § 251(g) preserved state authority to regulate that traffic and that federal law did not preempt the Board's authority to regulate the nonnomadic, intrastate long-distance VoIP calls at issue in this case.

The judgment is affirmed.

_____

_____

[6]During oral argument, Sprint conceded that we must apply the CAF Order if we conclude that the Sprint II decision did not require the district court to determine whether the disputed VoIP calls were information services or telecommunications services. Accordingly, to the extent that Sprint has argued that there existed no compensation regime to be preserved by § 251(g) because VoIP traffic did not exist in 1996, that argument fails in light of the CAF Order.