# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2984

_____

Sprint Communications Company, L.P.

*Plaintiff - Appellant*

v.

Elizabeth S. Jacobs; Swati A. Dandekar; Darrell Hanson, in their official
capacities as members of the Iowa Utilities Board

*Defendants - Appellees*[1]

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: March 13, 2012
Filed: September 4, 2012

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Sprint Communications Company, L.P. (Sprint) contests the Iowa Utilities
Board's (IUB) order compelling it to pay intrastate access charges to Windstream, an

_____

[1]Board members Jacobs and Dandekar are substituted for their predecessors
pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Iowa communications company, for Voice over Internet Protocol (VoIP) calls. Sprint filed a complaint in federal district court seeking declaratory and injunctive relief. The same day, Sprint also filed a petition for review in Iowa state court, asserting, among other claims, that the IUB's order was preempted under federal law. The federal district court abstained pursuant to Younger v. Harris, 401 U.S. 37 (1971), and dismissed the action. Sprint appeals, arguing that abstention is inappropriate in this case, and that even if appropriate, the district court should have stayed the case rather than dismissing it. We affirm the district court's decision to abstain, but we vacate the judgment of dismissal and remand the case with instruction to stay the proceedings.

I.

Windstream charges Sprint intrastate access charges to connect certain VoIP calls to Windstream customers. Sprint initially paid the charges, but later concluded that it was not required to pay intrastate access charges for the VoIP traffic. Sprint determined that the calls at issue are an "information service" and, as such, "not subject to access charges, whether those charges are interstate or intrastate." Appellant Br. 10. After Sprint discontinued payment, it filed a complaint with the IUB seeking a declaration that its decision to withhold the access charges claimed by Windstream was appropriate. Sprint argued that because only the Federal Communications Commission (FCC) has authority to classify the VoIP traffic, the IUB lacked jurisdiction to decide the issue. The IUB determined that it had jurisdiction and that Sprint was required to pay the access charges. Following the IUB's denial of Sprint's motion for reconsideration, Sprint filed this action in federal district court and, on the same day, a petition for review of the IUB's decision in Iowa state court. The IUB filed a motion to dismiss the federal litigation on abstention grounds. The district court granted the motion and dismissed the case, concluding that the state of Iowa has a substantial interest in the regulation of utilities within the state.

-2-

Because we decide only whether abstention was appropriate in this case, we do not reach the merits of Sprint's claim that Windstream's intrastate access charges do not apply to Sprint's VoIP traffic. The determination of that issue will turn on whether Sprint's VoIP traffic is an intrastate "telecommunications service" subject to IUB regulation, see 47 U.S.C. § 152(b),[2] or whether, as Sprint suggests, the calls at issue are included within the definition of "information service," see 47 U.S.C. § 153(24), which classification remains largely unregulated and exempt from access charges. For our discussion of the FCC's preemption of state regulation of the VoIP service at issue in that case, see Minnesota Public Utilities Commission v. Federal Communications Commission, 483 F.3d 570 (8th Cir. 2007).

## II.

We review a district court's decision to abstain for abuse of discretion. Plouffe v. Ligon, 606 F.3d 890, 893 (8th Cir. 2010); but see id. at 894-95 (Colloton, J., concurring).

Sprint first argues that it had the right to challenge the IUB's order in federal court. We do not disagree. But Sprint goes on to argue that its decision to file a state court petition for review should not affect our Younger abstention analysis. Sprint cites Alleghany Corp. v. McCartney, for the proposition that "a party cannot avoid Younger by choosing not to pursue available state appellate remedies." 896 F.2d 1138, 1144 (8th Cir. 1990). Sprint argues that McCartney teaches "that a federal plaintiff cannot trigger or avoid Younger abstention simply by filing or choosing not to file state-court proceedings." Appellant Br. 24. More accurately, McCartney

---

[2]Section 152(b) provides that, with certain exceptions, "nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communications service . . . ." Section 152(b) thus reserves a role for state regulation of intrastate communications.

holds that once a party initiates state "judicial" proceedings in which the state has an important interest, the party must follow the proceedings through to the end. The parallel state court proceeding thus has a bearing on our abstention analysis.[3]

Next, Sprint argues that abstention is inappropriate in this case because this case does not implicate the concerns the Younger abstention doctrine addresses. Whether Younger abstention is appropriate is determined by the factors outlined in Middlesex County Ethics Committee v. Garden State Bar Association. 457 U.S. 423 (1982). Middlesex held that federal courts should exercise Younger abstention when (1) there is an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) the state proceedings provide an adequate opportunity to raise constitutional challenges. Id. at 432; see also Fuller v. Ulland, 76 F.3d 957, 959 (8th Cir. 1996). Sprint argues that neither the first factor nor the second was met in this case. The third factor is not in dispute.

A.

Sprint contends that the first Middlesex factor is not met because the remedy it seeks would not interfere with any ongoing state proceeding. Sprint seeks a declaration that the IUB's order violates federal law and an order enjoining the IUB from enforcing its order requiring Sprint to pay intrastate access charges for the VoIP traffic at issue. Sprint argues that the only interference that could result from these remedies is the possible effect of collateral estoppel on the state court proceeding, an effect that is not the type of interference that Younger abstention seeks to prevent. We conclude that interference beyond simple collateral estoppel would result from a federal court's declaration of how a state utilities board should interpret its state's

---

[3]Contrary to Sprint's contention, we conclude that Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635 (2002), a case in which there was no ongoing state judicial proceeding, has no bearing on this case.

laws and regulations governing intrastate access charges and the entry of an order enjoining enforcement thereof.  See Cedar Rapids Cellular Tel., L.P. v. Miller, 280 F.3d 874, 882 (8th Cir. 2002) (concluding that the serious possibility of interference resulting from the use of a federal court injunction to preclude a state court remedy warranted Younger abstention).  Interests of comity and federalism support federal abstention where state judicial review of the IUB's order has not yet been completed. See New Orleans Pub. Servs., Inc. v. Council of New Orleans (*NOPSI*), 491 U.S. 350, 367-69 (1989).

B.

Sprint also contends that the important state interest prong of Middlesex is also not met.  Sprint first suggests that Iowa lacks a sufficiently important interest in the proceeding at issue because the proceedings are remedial, rather than coercive, arguing that Younger applies only to coercive proceedings.  Following our holding in McCartney, we held otherwise in Hudson v. Campbell,  663 F.3d 985, 987-88 (8th Cir. 2011).  "Although we have recognized the existence of the coercive-remedial distinction in other of our abstention cases, we have not considered the distinction to be outcome determinative."  Id. at 987 (internal citations omitted).  The same analysis applies in the present case.

Sprint continues by arguing that the state proceedings do not implicate an important state interest because telecommunications issues are not solely within the ambit of state regulatory authority.  Sprint points to McCartney, in which we stated that cases in the public utility area involve "a pervasive federal regulatory scheme which indicate[s] a strong federal interest."  896 F.2d at 1145.  True enough, but as the Supreme Court observed in NOPSI, states have "a substantial, legitimate interest in regulating intrastate retail rates."  491 U.S. at 365.  "[T]he regulation of utilities is one of the most important of the functions traditionally associated with the police

power of the States." Id. (alteration in original) (quoting Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n, 461 U.S. 375, 377 (1983)).

The Supreme Court also noted in NOPSI that:

> [W]hen we inquire into the substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the *outcome* of the particular case – which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what we look to is the importance of the generic proceedings to the State.

Id. at 365. In this case, as in NOPSI, the generic proceedings involve the state's regulation of intrastate utility rates. Sprint attempts to avoid the conclusion that Iowa has an important interest in the proceedings by contesting the IUB's authority even to decide whether intrastate access charges apply to VoIP traffic. This argument impermissibly narrows the focus to the outcome of the case, rather than the importance of the generic proceedings to the state. See id. at 366 (rejecting a similar argument challenging "the very right of the Council to conduct . . . deliberations"). Just as it had in enforcing its consumer protection statutes, see Cedar Rapids Cellular, 280 F.3d at 879-80, Iowa has an important state interest in regulating and enforcing its intrastate utility rates.

The Supreme Court went on in NOPSI to determine "whether the [state] court action is the type of proceeding to which Younger applies." 491 U.S. at 367. The Court distinguished between state judicial inquiries and legislation, noting that only judicial proceedings are entitled to Younger abstention. Id. at 368. In discussing the difference between judicial and legislative proceedings, the Court quoted Prentis v. Atlantic Coast Line Company, 211 U.S. 210 (1908):

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.

That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative and not judicial in kind . . . .

Id. at 226. The IUB is not attempting to establish a rate for the future, but rather is seeking to enforce the status quo that existed before Sprint ceased paying the intrastate access charges. The IUB's order attempts to enforce liabilities based on present facts and existing laws, and thus it constitutes a judicial proceeding that is entitled to Younger abstention.

## III.

Finally, Sprint contends that, if abstention is appropriate, the district court should have stayed rather than dismissed the case. We agree, for we have held that district courts should stay the case when there is a possibility that the parties will return to federal court. Cedar Rapids Cellular, 280 F.3d at 882-83; Fuller, 76 F.3d at 960-61. That being the case here, we conclude that the district court should have stayed rather than dismissed the case.

## IV.

We affirm the district court's decision to abstain from exercising jurisdiction over Sprint's claims. We vacate the judgment of dismissal and remand the case to the district court for the entry of a stay of this action.

_____