(Slip Opinion) OCTOBER TERM, 2013 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SPRINT COMMUNICATIONS, INC. *v.* JACOBS ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 12–815.   Argued November 5, 2013—Decided December 10, 2013

Sprint Communications, Inc. (Sprint), a national telecommunications service provider, withheld payment of intercarrier access fees imposed by Windstream Iowa Communications, Inc. (Windstream), a local telecommunications carrier, for long distance Voice over Internet Protocol (VoIP) calls, after concluding that the Telecommunications Act of 1996 preempted intrastate regulation of VoIP traffic. Windstream responded by threatening to block all Sprint customer calls, which led Sprint to ask the Iowa Utilities Board (IUB) to enjoin Windstream from discontinuing service to Sprint. Windstream retracted its threat, and Sprint moved to withdraw its complaint. Concerned that the dispute would recur, the IUB continued the proceedings in order to resolve the question whether VoIP calls are subject to intrastate regulation. Rejecting Sprint's argument that this question was governed by federal law, the IUB ruled that intrastate fees applied to VoIP calls.

   Sprint sued respondents, IUB members (collectively IUB), in Federal District Court, seeking a declaration that the Telecommunications Act of 1996 preempted the IUB's decision. As relief, Sprint sought an injunction against enforcement of the IUB's order. Sprint also sought review of the IUB's order in Iowa state court, reiterating the preemption argument made in Sprint's federal-court complaint and asserting several other claims. Invoking *Younger* v. *Harris*, 401 U. S. 37, the Federal District Court abstained from adjudicating Sprint's complaint in deference to the parallel state-court proceeding. The Eighth Circuit affirmed the District Court's abstention decision, concluding that *Younger* abstention was required because the ongoing state-court review concerned Iowa's important interest in regulating and enforcing state utility rates.

Syllabus

*Held:* This case does not fall within any of the three classes of exceptional cases for which *Younger* abstention is appropriate.  Pp. 6–12.

(a) The District Court had jurisdiction to decide whether federal law preempted the IUB's decision, see *Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.*, 535 U. S. 635, 642, and thus had a "virtually unflagging obligation" to hear and decide the case, *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800, 817.  In *Younger*, this Court recognized an exception to that obligation for cases in which there is a parallel, pending state criminal proceeding.  This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, see *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592, or that implicate a State's interest in enforcing the orders and judgments of its courts, see *Pennzoil Co.* v. *Texaco Inc.*, 481 U. S. 1, but has reaffirmed that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States," *New Orleans Public Service, Inc.* v. *Council of City of New Orleans*, 491 U. S. 350, 368 (*NOPSI*).  *NOPSI* identified three such "exceptional circumstances."  First, *Younger* precludes federal intrusion into ongoing state criminal prosecutions.  See 491 U. S., at 368.  Second, certain "civil enforcement proceedings" warrant *Younger* abstention.  *Ibid.*  Finally, federal courts should refrain from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Ibid.*  This Court has not applied *Younger* outside these three "exceptional" categories, and rules, in accord with *NOPSI*, that they define *Younger*'s scope.  Pp. 6–8.

(b) The initial IUB proceeding does not fall within any of *NOPSI*'s three exceptional categories and therefore does not trigger *Younger* abstention.  The first and third categories plainly do not accommodate the IUB's proceeding, which was civil, not criminal in character, and which did not touch on a state court's ability to perform its judicial function.  Nor is the IUB's order an act of civil enforcement of the kind to which *Younger* has been extended.  The IUB proceeding is not "akin to a criminal prosecution."  *Huffman*, 420 U. S., at 604.  Nor was it initiated by "the State in its sovereign capacity," *Trainor* v. *Hernandez*, 431 U. S. 434, 444, to sanction Sprint for some wrongful act, see, *e.g., Middlesex County Ethics Comm.* v. *Garden State Bar Assn.*, 457 U. S. 423, 433–434.  Rather, the action was initiated by Sprint, a private corporation.  No state authority conducted an investigation into Sprint's activities or lodged a formal complaint against Sprint.

Once Sprint withdrew the complaint that commenced administrative proceedings, the IUB argues, those proceedings became, essentially, a civil enforcement action.  However, the IUB's adjudicative

Syllabus

authority was invoked to settle a civil dispute between two private parties, not to sanction Sprint for a wrongful act.

In holding that abstention was the proper course, the Eighth Circuit misinterpreted this Court's decision in *Middlesex* to mean that *Younger* abstention is warranted whenever there is (1) "an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) . . . provide[s] an adequate opportunity to raise [federal] challenges." In *Middlesex*, the Court invoked *Younger* to bar a federal court from entertaining a lawyer's challenge to a state ethics committee's pending investigation of the lawyer. Unlike the IUB's proceeding, however, the state ethics committee's hearing in *Middlesex* was plainly "akin to a criminal proceeding": An investigation and formal complaint preceded the hearing, an agency of the State's Supreme Court initiated the hearing, and the hearing's purpose was to determine whether the lawyer should be disciplined for failing to meet the State's professional conduct standards. 457 U. S., at 433–435. The three Middlesex conditions invoked by the Court of Appeals were therefore not dispositive; they were, instead, *additional* factors appropriately considered by the federal court before invoking *Younger*. *Younger* extends to the three "exceptional circumstances" identified in *NOPSI*, but no further. Pp. 8–11.

690 F. 3d 864, reversed.

GINSBURG, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–815

SPRINT COMMUNICATIONS, INC., PETITIONER *v.*
ELIZABETH S. JACOBS ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[December 10, 2013]

JUSTICE GINSBURG delivered the opinion of the Court.

This case involves two proceedings, one pending in state court, the other in federal court. Each seeks review of an Iowa Utilities Board (IUB or Board) order. And each presents the question whether Windstream Iowa Communications, Inc. (Windstream), a local telecommunications carrier, may impose on Sprint Communications, Inc. (Sprint), intrastate access charges for telephone calls transported via the Internet. Federal-court jurisdiction over controversies of this kind was confirmed in *Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.*, 535 U. S. 635 (2002). Invoking *Younger* v. *Harris*, 401 U. S. 37 (1971), the U. S. District Court for the Southern District of Iowa abstained from adjudicating Sprint's complaint in deference to the parallel state-court proceeding, and the Court of Appeals for the Eighth Circuit affirmed the District Court's abstention decision.

We reverse the judgment of the Court of Appeals. In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves

the same subject matter. *New Orleans Public Service, Inc.* v. *Council of City of New Orleans*, 491 U. S. 350, 373 (1989) (*NOPSI*) ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts."). This Court has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief. See *id.,* at 368.

*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, see *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, see *Pennzoil Co.* v. *Texaco Inc.*, 481 U. S. 1 (1987). We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." *NOPSI*, 491 U. S., at 368.

Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI*, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.,* at 367–368. Because this case presents none of the circumstances the Court has ranked as "exceptional," the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800, 817 (1976) (quoting *McClellan* v. *Carland*, 217 U. S. 268, 282 (1910)).

## I

Sprint, a national telecommunications service provider, has long paid intercarrier access fees to the Iowa communications company Windstream (formerly Iowa Telecom) for certain long distance calls placed by Sprint customers to Windstream's in-state customers. In 2009, however, Sprint decided to withhold payment for a subset of those calls, classified as Voice over Internet Protocol (VoIP), after concluding that the Telecommunications Act of 1996 preempted intrastate regulation of VoIP traffic.[1] In response, Windstream threatened to block all calls to and from Sprint customers.

Sprint filed a complaint against Windstream with the IUB asking the Board to enjoin Windstream from discontinuing service to Sprint. In Sprint's view, Iowa law entitled it to withhold payment while it contested the access charges and prohibited Windstream from carrying out its disconnection threat. In answer to Sprint's complaint, Windstream retracted its threat to discontinue serving Sprint, and Sprint moved, successfully, to withdraw its complaint. Because the conflict between Sprint and Windstream over VoIP calls was "likely to recur," however, the IUB decided to continue the proceedings to resolve the underlying legal question, *i.e.,* whether VoIP calls are subject to intrastate regulation. Order in *Sprint Communications Co.* v. *Iowa Telecommunications Servs., Inc.*, No. FCU–2010–0001 (IUB, Feb. 1, 2010), p. 6 (IUB Order). The question retained by the IUB, Sprint argued, was governed by federal law, and was not within the IUB's adjudicative jurisdiction. The IUB disagreed, ruling that

————————

[1] The Federal Communications Commission has yet to provide its view on whether the Telecommunications Act categorically preempts intrastate access charges for VoIP calls. See *In re Connect America Fund*, 26 FCC Rcd. 17663, 18002, ¶934 (2011) (reserving the question whether all VoIP calls "must be subject exclusively to federal regulation").

the intrastate fees applied to VoIP calls.[2]

Seeking to overturn the Board's ruling, Sprint commenced two lawsuits. First, Sprint sued the members of the IUB (respondents here)[3] in their official capacities in the United States District Court for the Southern District of Iowa. In its federal-court complaint, Sprint sought a declaration that the Telecommunications Act of 1996 preempted the IUB's decision; as relief, Sprint requested an injunction against enforcement of the IUB's order. Second, Sprint petitioned for review of the IUB's order in Iowa state court. The state petition reiterated the preemption argument Sprint made in its federal-court complaint; in addition, Sprint asserted state law and procedural due process claims. Because Eighth Circuit precedent effectively required a plaintiff to exhaust state remedies before proceeding to federal court, see *Alleghany Corp.* v. *McCartney*, 896 F. 2d 1138 (1990), Sprint urges that it filed the state suit as a protective measure. Failing to do so, Sprint explains, risked losing the opportunity to obtain any review, federal or state, should the federal court decide to abstain after the expiration of the Iowa statute of limitations. See Brief for Petitioner 7–8.[4]

As Sprint anticipated, the IUB filed a motion asking the Federal District Court to abstain in light of the state suit, citing *Younger* v. *Harris*, 401 U. S. 37 (1971). The District Court granted the IUB's motion and dismissed the suit.

––––––––––

[2] At the conclusion of the IUB proceedings, Sprint paid Windstream all contested fees.

[3] For convenience, we refer to respondents collectively as the IUB.

[4] Since we granted certiorari, the Iowa state court issued an opinion rejecting Sprint's preemption claim on the merits. *Sprint Communications Co.* v. *Iowa Utils. Bd.*, No. CV–8638, App. to Joint Supp. Brief 20a–36a (Iowa Dist. Ct., Sept. 16, 2013). The Iowa court decision does not, in the parties' view, moot this case, see Joint Supp. Brief 1, and we agree. Because Sprint intends to appeal the state-court decision, the "controversy . . . remains live." *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U. S. 280, 291, n. 7 (2005).

The IUB's decision, and the pending state-court review of it, the District Court said, composed one "uninterruptible process" implicating important state interests. On that ground, the court ruled, *Younger* abstention was in order. *Sprint Communications Co.* v. *Berntsen*, No. 4:11–cv–00183–JAJ (SD Iowa, Aug. 1, 2011), App. to Pet. for Cert. 24a.

For the most part, the Eighth Circuit agreed with the District Court's judgment. The Court of Appeals rejected the argument, accepted by several of its sister courts, that *Younger* abstention is appropriate only when the parallel state proceedings are "coercive," rather than "remedial," in nature. 690 F. 3d 864, 868 (2012); cf. *Guillemard-Ginorio* v. *Contreras-Gómez*, 585 F. 3d 508, 522 (CA1 2009) ("[P]roceedings must be coercive, and in most cases, state-initiated, in order to warrant abstention."). Instead, the Eighth Circuit read this Court's precedent to require *Younger* abstention whenever "an ongoing state judicial proceeding . . . implicates important state interests, and . . . the state proceedings provide adequate opportunity to raise [federal] challenges." 690 F. 3d, at 867 (citing *Middlesex County Ethics Comm.* v. *Garden State Bar Assn.*, 457 U. S. 423, 432 (1982)). Those criteria were satisfied here, the appeals court held, because the ongoing state-court review of the IUB's decision concerned Iowa's "important state interest in regulating and enforcing its intrastate utility rates." 690 F. 3d, at 868. Recognizing the "possibility that the parties [might] return to federal court," however, the Court of Appeals vacated the judgment dismissing Sprint's complaint. In lieu of dismissal, the Eighth Circuit remanded the case, instructing the District Court to enter a stay during the pendency of the state-court action. *Id.,* at 869.

We granted certiorari to decide whether, consistent with our delineation of cases encompassed by the *Younger* doctrine, abstention was appropriate here. 569 U. S. ___

(2013).[5]

## II
## A

Neither party has questioned the District Court's juris-diction to decide whether federal law preempted the IUB's decision, and rightly so. In *Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.*, 535 U. S. 635 (2002), we reviewed a similar federal-court challenge to a state administrative adjudication. In that case, as here, the party seeking federal-court review of a state agency's decision urged that the Telecommunications Act of 1996 preempted the state action. We had "no doubt that federal courts ha[d federal question] jurisdiction under [28 U. S. C.] §1331 to enter-tain such a suit," *id.,* at 642, and nothing in the Telecom-munications Act detracted from that conclusion, see *id.,* at 643.

Federal courts, it was early and famously said, have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821). Jurisdiction existing, this Court has cautioned, a federal court's "obligation" to hear and decide a case is "virtually unflagging." *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800, 817 (1976). Parallel state-court proceedings do not detract from that obligation. See *ibid.*

In *Younger*, we recognized a "far-from-novel" exception to this general rule. *New Orleans Public Service, Inc.* v. *Council of City of New Orleans*, 491 U. S. 350, 364 (1989) (*NOPSI*). The plaintiff in *Younger* sought federal-court adjudication of the constitutionality of the California

---

[5] The IUB agrees with Sprint that our decision in *Burford* v. *Sun Oil Co.*, 319 U. S. 315 (1943), cannot independently sustain the Eighth Circuit's abstention analysis. See Brief for Respondents 9; cf. *New Orleans Public Service, Inc.* v. *Council of City of New Orleans*, 491 U. S. 350, 359 (1989).

Criminal Syndicalism Act. Requesting an injunction against the Act's enforcement, the federal-court plaintiff was at the time the defendant in a pending state criminal prosecution under the Act. In those circumstances, we said, the federal court should decline to enjoin the prosecution, absent bad faith, harassment, or a patently invalid state statute. See 401 U. S., at 53–54. Abstention was in order, we explained, under "the basic doctrine of equity jurisprudence that courts of equity should not act . . . to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparably injury if denied equitable relief." *Id.,* at 43–44. "[R]estraining equity jurisdiction within narrow limits," the Court observed, would "prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions." *Id.,* at 44. We explained as well that this doctrine was "reinforced" by the notion of "'comity,' that is, a proper respect for state functions." *Ibid.*

We have since applied *Younger* to bar federal relief in certain civil actions. *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592 (1975), is the pathmarking decision. There, Ohio officials brought a civil action in state court to abate the showing of obscene movies in Pursue's theater. Because the State was a party and the proceeding was "in aid of and closely related to [the State's] criminal statutes," the Court held *Younger* abstention appropriate. *Id.,* at 604.

More recently, in *NOPSI*, 491 U. S., at 368, the Court had occasion to review and restate our *Younger* jurisprudence. *NOPSI* addressed and rejected an argument that a federal court should refuse to exercise jurisdiction to review a state council's ratemaking decision. "[O]nly exceptional circumstances," we reaffirmed, "justify a federal court's refusal to decide a case in deference to the States." *Ibid.* Those "exceptional circumstances" exist, the Court determined after surveying prior decisions, in three types of proceedings. First, *Younger* precluded

federal intrusion into ongoing state criminal prosecutions. See *ibid.* Second, certain "civil enforcement proceedings" warranted abstention. *Ibid.* (citing, *e.g., Huffman*, 420 U. S., at 604). Finally, federal courts refrained from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." 491 U. S., at 368 (citing *Juidice* v. *Vail*, 430 U. S. 327, 336, n. 12 (1977), and *Pennzoil Co.* v. *Texaco Inc.*, 481 U. S. 1, 13 (1987)). We have not applied *Younger* outside these three "exceptional" categories, and today hold, in accord with *NOPSI*, that they define *Younger*'s scope.

## B

The IUB does not assert that the Iowa state court's review of the Board decision, considered alone, implicates *Younger*. Rather, the initial administrative proceeding justifies staying any action in federal court, the IUB contends, until the state review process has concluded. The same argument was advanced in *NOPSI*. 491 U. S., at 368. We will assume without deciding, as the Court did in *NOPSI*, that an administrative adjudication and the subsequent state court's review of it count as a "unitary process" for *Younger* purposes. *Id.,* at 369. The question remains, however, whether the initial IUB proceeding is of the "sort . . . entitled to *Younger* treatment." *Ibid.*

The IUB proceeding, we conclude, does not fall within any of the three exceptional categories described in *NOPSI* and therefore does not trigger *Younger* abstention. The first and third categories plainly do not accommodate the IUB's proceeding. That proceeding was civil, not criminal in character, and it did not touch on a state court's ability to perform its judicial function. Cf. *Juidice*, 430 U. S., at 336, n. 12 (civil contempt order); *Pennzoil*, 481 U. S., at 13 (requirement for posting bond pending appeal).

Nor does the IUB's order rank as an act of civil enforce-

ment of the kind to which *Younger* has been extended. Our decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings "akin to a criminal prosecution" in "important respects." *Huffman*, 420 U. S., at 604. See also *Middlesex*, 457 U. S., at 432 (*Younger* abstention appropriate where "noncriminal proceedings bear a close relationship to proceedings criminal in nature"). Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.,* the party challenging the state action, for some wrongful act. See, *e.g., Middlesex*, 457 U. S., at 433–434 (state-initiated disciplinary proceedings against lawyer for violation of state ethics rules). In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. See, *e.g., Ohio Civil Rights Comm'n* v. *Dayton Christian Schools, Inc.*, 477 U. S. 619 (1986) (state-initiated administrative proceedings to enforce state civil rights laws); *Moore* v. *Sims*, 442 U. S. 415, 419–420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents); *Trainor* v. *Hernandez*, 431 U. S. 434, 444 (1977) (civil proceeding "brought by the State in its sovereign capacity" to recover welfare payments defendants had allegedly obtained by fraud); *Huffman*, 420 U. S., at 598 (state-initiated proceeding to enforce obscenity laws). Investigations are commonly involved, often culminating in the filing of a formal complaint or charges. See, *e.g., Dayton*, 477 U. S., at 624 (noting preliminary investigation and complaint); *Middlesex*, 457 U. S., at 433 (same).

The IUB proceeding does not resemble the state enforcement actions this Court has found appropriate for *Younger* abstention. It is not "akin to a criminal prosecution." *Huffman*, 420 U. S., at 604. Nor was it initiated by "the State in its sovereign capacity." *Trainor*, 431 U. S., at 444. A private corporation, Sprint, initiated the action. No state authority conducted an investigation into Sprint's

activities, and no state actor lodged a formal complaint against Sprint.

In its brief, the IUB emphasizes Sprint's decision to withdraw the complaint that commenced proceedings before the Board. At that point, the IUB argues, Sprint was no longer a willing participant, and the proceedings became, essentially, a civil enforcement action. See Brief for Respondents 31.[6] The IUB's adjudicative authority, however, was invoked to settle a civil dispute between two private parties, not to sanction Sprint for commission of a wrongful act. Although Sprint withdrew its complaint, administrative efficiency, not misconduct by Sprint, prompted the IUB to answer the underlying federal question. By determining the intercarrier compensation regime applicable to VoIP calls, the IUB sought to avoid renewed litigation of the parties' dispute. Because the underlying legal question remained unsettled, the Board observed, the controversy was "likely to recur." IUB Order 6. Nothing here suggests that the IUB proceeding was "more akin to a criminal prosecution than are most civil cases." *Huffman*, 420 U. S., at 604.

In holding that abstention was the proper course, the Eighth Circuit relied heavily on this Court's decision in *Middlesex*. *Younger* abstention was warranted, the Court of Appeals read *Middlesex* to say, whenever three conditions are met: There is (1) "an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) . . . provide[s] an adequate opportunity to raise

_____

[6] To determine whether a state proceeding is an enforcement action under *Younger*, several Courts of Appeals, as noted, see *supra,* at 5, inquire whether the underlying state proceeding is "coercive" rather than "remedial." See, *e.g., Devlin* v. *Kalm*, 594 F. 3d 893, 895 (CA6 2010). Though we referenced this dichotomy once in a footnote, see *Ohio Civil Rights Comm'n* v. *Dayton Christian Schools, Inc.*, 477 U. S. 619, 627, n. 2 (1986), we do not find the inquiry necessary or inevitably helpful, given the susceptibility of the designations to manipulation.

[federal] challenges." 690 F. 3d, at 867 (citing *Middlesex*, 457 U. S., at 432). Before this Court, the IUB has endorsed the Eighth Circuit's approach. Brief for Respondents 13.

The Court of Appeals and the IUB attribute to this Court's decision in *Middlesex* extraordinary breadth. We invoked *Younger* in *Middlesex* to bar a federal court from entertaining a lawyer's challenge to a New Jersey state ethics committee's pending investigation of the lawyer. Unlike the IUB proceeding here, the state ethics committee's hearing in *Middlesex* was indeed "akin to a criminal proceeding." As we noted, an investigation and formal complaint preceded the hearing, an agency of the State's Supreme Court initiated the hearing, and the purpose of the hearing was to determine whether the lawyer should be disciplined for his failure to meet the State's standards of professional conduct. 457 U. S., at 433–435. See also *id.,* at 438 (Brennan, J., concurring in judgment) (noting the "quasi-criminal nature of bar disciplinary proceedings"). The three *Middlesex* conditions recited above were not dispositive; they were, instead, *additional* factors appropriately considered by the federal court before invoking *Younger*.

Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. See Tr. of Oral Arg. 35–36. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule." *Hawaii Housing Authority* v. *Midkiff*, 467 U. S. 229, 236 (1984) (quoting *Colorado River*, 424 U. S., at 813). In short, to guide other federal courts, we today clarify and affirm that *Younger* extends to the three "exceptional circumstances" identified in *NOPSI*, but no further.

Opinion of the Court

\*          \*          \*

For the reasons stated, the judgment of the United States Court of Appeals for the Eighth Circuit is

*Reversed.*