KETHLEDGE, Circuit Judge,
dissenting.
To meet a burden of proof, a party usually must provide some. Here, it is common ground that the federal courts have jurisdiction over this case and that the plaintiffs bear the burden of proving that we may lawfully abstain from exercising that jurisdiction. The plaintiffs have not met that burden, or even tried.
By way of background, the federal courts “have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.” Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Abstention is an “extraordinary and narrow exception” to that duty. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Thus, only the “clearest of justifications” will justify abstention. Rouse v. DaimlerChrysler Corp., 300 F.3d 711, 715 (6th Cir. 2002).
We have nothing like a clear justification for abstention . here. The federal courts undisputedly have' jurisdiction over this case under the Class Action Fairness Act. See 28 U.S.C. § 1332(d). Instead the question here, broadly stated, is whether we may abstain from exercising that jurisdiction per the Act’s so-called “local-controversy exception.” For .that exception to apply—and thus for us lawfully to send the case back to state court—the plaintiffs must prove, among other things, both that more than two-thirds of the putative class-members “are citizens of the State in which the action was originally filed” (i.e., Michigan) and that the alleged conduct of the sole Michigan defendant “forms a significant basis for the claims” of the putative class. Id. § 1332(d)(4)(A)(I), (II)(bb).
The plaintiffs have proved neither. As for the first requirement, every circuit to have considered the issue—five so far— has held that “there must ordinarily be at least some facts in evidence from which the district court may make findings re *398 garding the class members’ citizenship for purposes of CAFA’s local-controversy exception.” Mondragon v. Capital One Auto Finance, 736 F.3d 880, 884 (9th Cir. 2013) (gathering cases); see also Reece v. AES Corp., 638 Fed.Appx. 755, 769-70 (10th Cir. 2016); In re Sprint Nextel Corp., 593 F.3d 669, 674-676 (7th Cir. 2010); Preston v. Tenet Healthsystem Mem’l Med. Ctr., Inc., 485 F.3d 793, 799-801 (5th Cir. 2007); Evans v. Walter Indus., Inc., 449 F.3d 1159, 1166 (11th Cir. 2006). Meanwhile, as the majority correctly observes, citizenship in this context equates to domicile, and domicile consists of both residence in a State and an intention to remain there. Maj. Op. at 389-90. Thus, to meet this requirement, the plaintiffs must show by a preponderance of the evidence that more than two-thirds of the putative class-members both reside in Michigan and intend to remain there. But on those points (or any other) the plaintiffs have presented ho evidence at all. Instead they merely cite the allegations in their complaint. That, per the law of every circuit to have addressed the issue, is .reason enough to conclude that we must exercise our jurisdiction in this case. .
The majority concludes otherwise by means of a presumption.- As an initial matter, the guesswork here begins with even defining the putative class, since the plaintiffs neglected to defíne it in their putative class-action complaint. But the complaint does say that the class-members are similarly situated to the plaintiffs, and that the plaintiffs are “residents and property owners in the City of Flint” who (or which, as the case may be) were exposed to water supplied from the Flint River after April 25, 2014. Complaint ¶¶ 1, 84.- Plaintiffs’ counsel also clarified during oral argument that the phrase “property owners” does not modify “residents,” but instead describes a separate group within the putative class. Thus, taking the allegations and clarification together, one can surmise that the class includes residents exposed to the Flint water supply after April 25, 2014, and property owners likewise exposed.
At this point the majority’s presumption arises. According to the majority, the plaintiffs have alleged that the class members are residents of Flint, which (in the majority’s view) creates a presumption that they are citizens as well, which in turn throws upon the defendants the burden of proving that one-third of the putative class are not citizens of Michigan. But this reasoning is mistaken both factually and legally. The factual mistake is the assertion that the plaintiffs have alleged that all the class members are Flint residents, since— per the statement of plaintiffs’ counsel at oral argument—the class includes Flint “property owners” who need not be residents of Flint (or Michigan) to be members of the class. Thus, the majority’s presumption of citizenship does not apply to “property owners”—whose numbers are anyone’s guess. Even the majority’s presumption, therefore, does not provide us with anything near what the law would regard as a proper basis to conclude that two-thirds—as opposed to one-third, or one-half, or three-quarters—of the putative class-members are Michigan citizens. We thus lack the requisite “clearest of justifications” to decline to exercise our jurisdiction here. Rouse, 300 F.3d at 715.
The majority’s legal mistake is more complicated. The majority observes, correctly, that “there is a presumption against federal jurisdiction,]” Maj. Op. at 391; which in any particular case the party asserting jurisdiction must overcome. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Thus, the majority reasons further, the federal courts cannot presume in diversity cases—where the existence of the court’s jurisdiction de *399 pends on the parties' citizenship—that a party is a citizen of a state simply because the party is a resident of it. For in that event the court would presume that .jurisdiction exists, when instead the court must presume that it does not. But here the situation is different, the majority reasons, because in this case the federal courts already have jurisdiction; the question instead is whether to exercise it. The majority thus splits with five other circuits, and concludes that we are free to presume that a mere allegation of residency in Michigan is enough to prove citizenship there.
What the majority overlooks, however, is the “virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.” Colorado River, 424 U.S. at 817, 96 S.Ct. 1236. As Chief Justice Marshall put it nearly 200 years ago: “We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.” Cohens v. Virginia, 19 U.S. 264, 404, 6 Wheat. 264, 5 L.Ed. 257 (1821); see also Sprint Communications, Inc. v. Jacobs, — U.S. —, 134 S.Ct. 584, 590-91, 187 L.Ed.2d 505 (2013) (same). That means we cannot presume a fact that allows us to decline jurisdiction, any more than we can presume a fact that allows us to find that jurisdiction exists in the first place. Thus, just as we cannot presume that residency equals citizenship when determining whether jurisdiction exists, neither can we apply that same presumption when determining whether we can decline jurisdiction. And that is exactly what the majority, does here.
I would therefore dispense with all the dueling presumptions, and instead simply ask what the other circuits ask: whether the plaintiffs have produced “evidence from which the district court may make findings” that more than two-thirds of the putative class-members are citizens of the State in which the case was originally filed. Mondragon, 736 F.3d at 884. Here, the plaintiffs have not produced such evidence, or even any evidence at all. That conclusion, standing alone, means that we must exercise our jurisdiction in this case.
More briefly, the plaintiffs have likewise failed to show that the only Michigan defendant in this case—Lockwood, Andrews & Newnam, P.C. (“Lockwood P.C.”)—is one “whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class[.]” 28 U.S.C. § 1332(d)(4)(A)(II)(bb). As an initial matter, as the Ninth Circuit has persuasively explained, the statutory reference to “alleged conduct” means that (in contrast to the citizenship requirement) we look solely to the allegations in the complaint when determining whether the plaintiffs have met this prerequisite to abstention. See Coleman v. Estes Exp. Lines, Inc., 631 F.3d 1010, 1015 (9th Cir. 2011). Our inquiry as to this prerequisite is comparative: we ask whether the in-state defendant’s conduct, as alleged in the complaint, is important when compared to the conduct of the other defendants as so alleged. See, e.g., Westerfeld v. Ind. Processing LLC, 621 F.3d 819, 825 (8th Cir. 2010); Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 156 (3d Cir. 2009); Evans, 449 F.3d at 1167.
Here, the plaintiffs’ allegations as to the Michigan defendant—Lockwood P.C.—are an enigma. The complaint alleges that the City of Flint retained a Texas corporation—Lockwood, Andrews Newnam, Inc. (“Lockwood Inc.”), , which is likewise a defendant here—“to conduct studies and reports of a new water supply that was being developed” for the City. Complaint ¶ 3. The complaint also alleges that Lockwood P.C. “was incorporated in 2008 by” Lockwood Inc. after the latter was so retained, *400 and that Lockwood Inc. “conducted business in Genesee County, Michigan through” Lockwood P.C. The complaint then proceeds to define both Lockwood entities collectively as “LAN,” which for the remainder of the complaint is the subject of every verb describing conduct allegedly forming the basis of the plaintiffs’ claims. Thus, as in a Fifth Circuit case, “nothing in the complaint distinguishes the conduct of [Lockwood P.C.] from the conduct of the other defendants.” Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc., 655 F.3d 358, 362 (5th Cir. 2011). The complaint therefore “contains no information about the conduct of [Lockwood P.C.] relative to the conduct of the other defendants[,]” and thus does not establish that Lockwood P.C.’s conduct “forms a significant basis of the plaintiff[s’] claims.” Id. Moreover, the complaint never explains what the plaintiffs mean by their allegation that Lockwood Inc. conducted business “through” Lockwood P.C. Instead, that phrase remains an exercise in studied ambiguity. Finally, what the complaint does say about the conduct of the defendants relative to one another affirmatively suggests that the more significant actor was the remaining defendant, Leo A. Daly Company, a Nebraska corporation (which the complaint calls “LAD”). Specifically, the complaint alleges that “LAN is a subsidiary of LAD,” that “LAN exists as a separate entity from LAD in name only[,]” and that “LAN is totally reliant upon LAD for direction with regard to all critical aspects of the issues giving rise to this lawsuit.” Complaint ¶ 80. The complaint thus provides plenty of reason to conclude that LAD’s conduct was significant as compared to either of the Lockwood entities, but no basis at all to conclude that the conduct of Lockwood P.C., in particular, was significant as compared to the conduct of the other defendants. Indeed, the district court never found that Lockwood P.C.’s alleged conduct formed a “significant basis” for the claims of the putative class. Instead, the majority supplies that finding for the first time in its opinion today.
It should take a better showing than this for a federal court to cast off its unflagging duty to exercise the jurisdiction assigned to it by Congress. I respectfully dissent.